and Special Needs Board. Ms. Harrison. Thank you, Your Honor. May it please the court. Your Honor, the lower court's decisions were so riddled with errors. We would ask that the court reverse the orders of the lower court and grant summary judgment. Our request for summary judgment and a directed verdict are a mutual agreement. We would ask for a I'll start with the errors on the statute of limitations. Your Honor, during the preliminary hearings, the judge recognized there was a discovery rule issue. Up until 2013, the family had not been informed about injuries, sexual assault, ongoing problems that represented violations. In 2013, when Johnny Timpson's arms were burned, she was told you have to go get a power of attorney before we'll give you records. She got the power of attorney and they said, no, that doesn't work. He can't do that. And let me back up a little bit. Our clients are Johnny Timpson, who is a person with pretty severe mental incapacity. He has the of a preschool child and his sister, Sandra Timpson. Your Honor, so the court erred in not applying the discovery rule. Then we get to the issue of the ADA one-year statute of limitations. We shouldn't be back here at this court with this argument again. We resolved that in Stonsell. The court resolved that in Seminole. These agencies that have 12 private lawyers are still arguing that the South Carolina Human Affairs Commission law control. It does not give a right of action for violations of public service accommodations. It only allows those for race, color, religion, and national origin. Your Honor, I found 45-9-10, which is a statute that applies to hotels, motels, restaurants, and boarding houses. That state statute doesn't even apply to services that we're talking about here. Counsel, let me ask you a question. Let's just assume that you're correct and that there should have been two more years added under the statute of limitations analysis. Does that make a difference here? For the extra two years, what have you alleged or offered in proof in terms of either injury or damages? It makes a difference as to the retaliation against Sandra Timpson. When she tried to obtain records and they attempted to delay his leaving the home, and when they failed to inform her of other services to try to set him up to fail so he'd have to come back. So, it affects Sandra Timpson's claims as to retaliation. I think, did I answer that question, Your Honor? What about the rest of them? The rest of? The claims. Well, it affects others in that it goes back farther because this abuse had gone back for years. So, there was historical, there were assaults, there were sexual assaults that weren't being, that the family wasn't being informed about. So, we believe that, and the one-year statute of limitations, it's so important, Your Honors, to establish that the court thought they did it in Stogstall, but these defendants need to be told specifically that the one-year statute doesn't apply. Lawyers across the state continue to tell people with disabilities there's a one-year statute of limitation and not take their cases. But, what I'm asking is, Judge Agee asked a specific question and you addressed it regarding Sandra's retaliation claim. What about the two years on the other claims? What is there that says it makes a difference? I'm sorry, I'm not sure I understand the question, Your Honor. It's by going from one to three years on the claims other than Sandra's. The ones other than Sandra's, he only went back seven years and prior to the seven years, there was a historical pattern of abuse. You didn't make a, this isn't a class action, right? No, Your Honor, and it's not a class action and the district court made a big issue of that. Your Honor, I call your attention to the Olmstead case. It doesn't have to be a class action to require the court to look at systemic violations and not just the violations of the individual. Lois in the Olmstead case was an individual. Two individuals brought that case. It was not a class action, but the court looked at the system and whether individuals like Lois were also being segregated and that's what we have here, Your Honor. So, if you're, assuming you're correct that you get two years added back on the ADA, how does that cover a claim by the sister? Because retaliation against her, the attempts to prevent her from taking him out, occurred more than one year after the lawsuit was filed. It would have been covered within three years. They had her go get a power of attorney. They attempted to delay his release and that showed that there was retaliation against her. There's also retaliation against Johnny because once he talked to law enforcement, there's multiple unexplained injuries for Johnny saying they're beating me up. So, help me out. This is where I'm kind of getting a little confused. I think Judge Mott's alluded to, is it a class action? I'm trying to understand, what are those specific issues as to Johnny? I got the systemic issues, but what are the Johnny specific issues as to his injuries? Yes, sir. The court has said, and Judge Agee, you acknowledged in Pashby, that segregation in and of itself is discrimination. So, Johnny lived in a segregated environment where they had an obligation to inform him of his right to live in a less restrictive environment. And then even after he was released, they refused to give him services until we went through two levels of appeal and his condition deteriorated to the point that he spent one month in a mental institution suffering tremendous emotional trauma. He was out in the road, waving his hands at cars, telling the police to shoot me. That was trauma that he suffered because of the segregation, because of the treatment when they were violating the ADA and violating his right to live in a less restrictive setting. So, that continued even after he was released. If I've answered that, I'd like to go on to the ADA and rehab issues. The court dismissed our Rehabilitation Act claim in a hearing in 2018 and gave no explanation. Your Honor, we have shown that Johnny met his primifacia case to prove that he was a disabled person. The court erred by placing the burden on us throughout the litigation. And Olmstead, it's clear, and in cases since then, there's a DC circuit case, 2019 case, where the courts have said, once we meet our primifacia case, the burden shifts to the government to prove that what we asked for would cause a fundamental alteration. Because of that error, it infected the whole decision of the jury. Your Honor, I'd like to talk a little bit about the Tort Claims Act. The court instructed the jury that the standard of care was slight care. As long as they provided slight care, they met their obligation. The court totally ignored the controlling case of Madison v. Babcock Center. In that case, the slight care standard is not in the Tort Claims Act. It's not in the statute. That standard was established by the Supreme Court, and the Supreme Court established a carve out in Madison where they said, if there is a special relationship with the individual, and they said, when you have an individual with intellectual disabilities in a court, you have a direct obligation to that person. In Madison, they said, we don't care whether there's a criminal act. You still have an obligation. The court was totally in error when it said, well, DDSN, for them to be responsible under the Tort Claims Act, the group home employees had to be an employee of DDSN. The Supreme Court totally rebuked that in the Madison case. They said that an independent contractor, that DDSN is responsible for the acts of an independent contractor. The court said in Madison that you have to look at the standards. You have to look at the regulations. This gets into our exclusion issue. The district witnesses in December of 2016, there was no objection to a trial. We had two former members of the governing board of DDSN. We had an individual who had conducted investigations at DDSN. They were not allowed to testify. That's where we would have shown the standard of care that the agency was responsible for. So that was an error, one, to not let them testify as experts, and then even though he allowed Ms. McPherson to testify as a fact witness in front of the jury, the judge told the jury she is not an expert. So that tainted any testimony that Ms. McPherson, who had decades of experience with the agency, as well as having been on the governing board. This gets us, Your Honor, to the issue of Johnny not being able to testify. In Madison, the court talked about that. Just because a person doesn't have the capacity of an adult, they should not be excluded. Johnny knew what model of car he came in. He knew President Trump was the president. He answered most of the questions correctly, but we were limited in what Johnny was allowed, the plaintiff was allowed to testify about, and that was a legal error. The 1983 case, Judge Monson, Judge Wynn, y'all were on the Doe v. Kidd panel. The agency is still ignoring the reasonable promptness mandate. They failed to inform him the services he was entitled to. When he left, he had zero home-based services. We filed an appeal in January, and the fair hearing process wasn't over until September. So that is more than the 90 days allowed that the panel said was a standard in Doe v. Kidd 1. As to the feasible alternatives requirement of the Medicaid Act, Your Honor, they had the obligation to inform him of the home-based services that were available. We've alleged that they violated 1396 N.C. 2, which required them to protect the health and welfare of Johnny Timpson, and to assure the financial accountability of the program. Judge Adgey, you and your opinion, and Paschke talked about the importance of looking at the resources of the state, and you were absolutely correct about that. That's what Olmsted said. When we tried to show the resources of the state, and it actually cost more when they limited home-based services, this court and other district courts have refused to allow us to put in any evidence about the agency's failure to provide federally mandated cost support, and the fact that their budgets have increased by hundreds of millions of dollars, but yet they're not providing the services that they're required to provide in the least restrictive setting. Your Honor, as to Defendant Haley, twice she's been ordered in this case and another case to give a deposition. Twice the court has changed its position on that. The court granted Judge Haley's, Governor Haley's motion for sub-summary judgment sua sponte. She didn't file a motion for summary put into the record Ms. McPherson's letter and all of her communications with then Governor Haley about the systemic abuse and neglect in the system. I see my time is up. We would rely on our briefs on the remaining issues, Your Honor. Thank you very much. Mr. Frawley. Please the court. My name is Patrick Frawley. I'm an attorney with the Davis Law Firm in Lexington, and I will be arguing on behalf of all the defendants in this case. One thing I want to point out before we get too far into this is one of the things that Ms. McPherson has argued was that the family was never informed. And obviously Sandra Timpson is is one of her two parties. Sandra is a sister of Johnny Timpson, but there was another sister of Johnny Timpson, Angela Timpson. And Angela was never called to testify in this case. Angela shows up in a statement to an Anderson County Sheriff's deputy, making a remark about Sandra now being in the family when she had not been for a period of time and for purposes of financial exploitation, which in their briefs, the plaintiffs have said that was not said by them. It was said by Corporal T.L. Anderson, or T.L. Johnson rather, of the Anderson Sheriff's Department in his investigation, quoting Angela, who never testified in this case. So when the plaintiff argues that the family was never informed, the only person that testified at trial from this family, in addition to Johnny, was Sandra Timpson, not Angela Timpson, who had been along for quite a while. Could Angela have been called by both parties? Could have been. Could have been. Yes, ma'am. So you could have called her? I could have called her. I did not. They listed, I think, 25 witnesses. I had five, and all five of mine testified. That's correct, ma'am. But when she says that the family was not told, she's selective in who among the family testified for the claim. With regard to the ADA and rehabilitation issue, we addressed that in arguments D and F of our brief on pages 28 and 38. The district court held in December of 2018 its ruling on ADA and was dismissing it at that point, but then kind of changed its position within a 10-day period. And in a text order of December 28, 2018, it held its ruling on the ADA in abeyance. That's Joint Appendix Volume 7, page 3196. Eventually, he did dismiss the claims against all the defendants except Anderson County DSN Board. One of those claims went to the jury, and the jury returned a defense verdict on that claim. The plaintiffs argue in Issue 1, their arguments are conclusory. She doesn't cite, the plaintiffs don't cite evidence to the record. They make bold statements without attribution to evidence or Let me ask you the same question I put to opposing counsel, which is assuming that the district court erred on the ADA statute of limitations, so there should be two additional years of potential claims. What's your position on those two additional years? Is there evidence in the record as to That's a good point, Your Honor, and we make that argument in our brief. Well, now I'm asking you a question about what's in the record and whether or not there are claims for those two years. Yes, sir, there are not. There is nothing in the record as far as what took place. Ms. Harrison, in her argument, said that there was a history of abuse, a long history of abuse. There isn't. This was essentially a personal injury case. There were burns to Mr. Timpson in May of 2013, and as soon as Sandra Timpson was on the scene after that, there was three in quick succession in July and August of 2013, there were complaints about assaults on Johnny, all three of which were turned over to law enforcement, all three of which were investigated, and all three of which were dismissed. There's no evidence of a claim. So one response to the two additional years of statute of limitations is, well, where's the claim? If you have the two years... So when was the suit filed? The suit was filed in, I think, April of 2016. There was an amended complaint filed July... So the items that you have just reviewed were within the statute of limitations period as the district court held? Yes, sir. The May 2013 burns were within that period, and the three alleged assaults were within that period. Yes, sir. The thing she talks about, sexual assaults and so forth. First, they don't have any evidence in the record establishing that. There was nothing proffered for that. They listed over 207 documents, exhibits that were going to go in. Of those, 25 actually went in. In arguing, in making their argument in their brief, they don't cite to the record. They make statements of things that went on. The retaliation against Sandra. To this day, I don't know what retaliation there was against Sandra. In our plaintiff's exhibit number three, that is the case notes. There's reference to Sandra's first request to remove Johnny in... I think the first call was in May, I think May 7th of 2013, which is around the time of the go to a CPH2 facility near my home. She lives in Greenville. Anderson County is, I think, maybe 60, 70 miles away. That call was to Geraldine King of the Anderson County DSM board. I'm trying to understand where you're going with this, but I guess I want to follow up. With the two years, the jury did not consider the claims that occurred between February 2013 and 2015. You are pointing out things that happened in May of 2013. There were complaints about the treatment that Johnny was getting in the summer of 2013. She ultimately had to find a gear in August of 2013. Why is that not at least, because the jury didn't get it and the statute of limitations has been extended for two years, at least arguably protected conduct under the ADA? Judge Coggins had a one year plus five year. There was a five year extension because of his mental condition. It went back six years. What did moving it two years do then? What did moving it from one to two years do? Nothing. There's nothing argued in their brief. No attribution to evidence or proffered evidence or what claims would have been made at that time. How does that differ from Johnny? Because the extension was on Johnny's claims, how does that apply to Sandra? The five years would not to Sandra, no sir. Well, that's what I'm asking you about. I'm asking you about Sandra in those two years. Well, what Ms. Harrison just argued was some kind of retaliation claim against her, but that simply did not happen. I'm just pointing out, at least in terms of it, and we don't have to make the determination of whether it was or was not, the question is the jury didn't get anything from her during those two extra years. There's evidence in the record that she filed complaints about his treatment during the summer of 2013. You even articulated some of it in May. Then she withdrew him from this facility from the year in August of 2013. Why is that not potentially arguably something that's protected under EDA insofar as Sandra? I'm not quite sure I understand your honest question. In other words, she may have suffered some type of adverse reactions when she withdrew him. She continued to use those food stamps and all that stuff during that time period. Nobody told her that she could get those PCA payments. There's a lot there with regard to it. I just don't understand. I got the Johnny extension and the other, but that two years referred, that's not before the jury, and the question is whether there's sufficient evidence to take it for the retaliation. Your Honor, there was ample testimony from Mr. Thompson, from Ms. King, about what went on between the time that Sandra made the appearance and wanted to remove Johnny from Anderson County and put him in a CTH2 facility closer to her home. That they had a, I think it was August 7th, they had a conference call with several people in Mr. Thompson's office. So I want to be clear. I'm not questioning that there is some evidence on both sides of this. I'm not questioning that. I'm just saying it wasn't given to the jury. It wasn't even an issue in the case as to whether that conduct constituted that, and they have some evidence when we look at it there, that it puts it there. Why is that not sufficient, send it back to be considered a retaliation claim for that two-year period from February 13 to February 15? There was just nothing that was in there from the first instance of her involvement was in May of 2013, and from that point forward, everything went to the jury at that point. There was no evidence of other acts or injuries to Ms. Thompson before. There wouldn't be, but there's a statute of limitation that doesn't reach back in that time period, and even so the jury couldn't decide it because you got a statute of limitation that prohibited that two-year period of time. Well, I agree with your honor. Had something been put in the record or had there been some indication that there was an injury that predated that and went back within the extension, I agree that that didn't get to the jury because of that, but there was never anything throughout the discovery process until the 2013 issues that came up with Ms. Thompson. And after that, the evidence that was put in from Mr. Thompson and from Gerald M. King and our plaintiff's exhibit number three, which were the notes of those conference calls, everything that was done at that point was to begin the process of getting Johnny out of Anderson County and putting him into another CTH2. Ms. Harrison mentions the issue about least restrictive settings. In 2008 and 2009, Johnny was at an SLP2 facility. They put him in a they had to bring him back in. On the issue of whether the family was informed, Johnny's mother was involved in the team exchange or team meeting when he was put into the less restrictive setting. And when they determined that they had to bring him back, Angela Thompson was involved in that team meeting. So there was involvement with the family and there was an attempt to put him in a lesser restrictive setting. There was also testimony from L.A. Taylor, who was the manager of the home, where he testified to the configuration of the home as far as whether it was an institution or not. Council, I really don't understand what your an improper ruling with respect to one period of statute of limitations. And what you say to us in response is, oh, there was a lot of evidence before the jury that helps us. That's fine. But what about the evidence that they weren't allowed to put in, the asserted evidence that they weren't allowed to put in because of the assertedly erroneous statute of limitations really? Well, your honor, my response to that would be that in their argument, they don't cite the proffered evidence in their brief. That would be it. And I agree. I agree that if there's a statute of limitations point where you can't go before that, you're obviously not going to be allowed to put evidence before that. I agree with that. So that all of your talk about the evidence really doesn't go to this issue, right? No, ma'am, it goes to what took place with Sandra's first coming on the scene and first meeting. Well, that's your assertion to us, but we don't have evidence with respect to two years, right? You say there's been no proffer. That's right. But there's no evidence. No evidence. When was the statute of limitations ruling made? I believe it was in December. No, no. In the context of the trial of this case. Would have been on the first or second. I mean, it was early in the trial. It was early enough that it would have precluded anybody putting in evidence of anything going back to what Ms. Harrison is arguing, the statute of limitations. Is there a place in the JA where there was discussion of this issue? There was, but I don't have that in front of me right now. I know there was a discussion with Judge Coggins where he went over with everyone about what the statute of limitations was with the additional five years for Johnny. He set that out and referred to it as a look back. And that is cited. I believe we've cited that in our brief. So when Judge Coggins discussed the whole case, did he say, but they haven't put in evidence of this? No, ma'am. I don't recall any discussion like that. Your Honor, with regard to the plaintiff's argument on slight care in the Madison case, they've misinterpreted Madison. Madison does make reference to the South Carolina Court Claims Act, section 15-78-60 paragraph 25, as requiring a plaintiff to prove gross negligence. And then we've cited the court to Etheridge versus Richland County School District, which is what defines gross negligence. One of the definitions being the failure to exercise even slight care. That's where the slight care reference comes from. And in the Madison case, the court, the trial court there recognized gross negligence as being the standard and said that it concluded that the issue of whether the defendant acted in a grossly negligent manner or not was a factual issue for the jury and left it to the jury on that. That was on page 661 of that opinion. That's exactly what Judge Coggins did. He sent that issue under the Court Claims Act, which was one of the causes of action remaining against the Anderson County PSN Board and DDSN, sent that to the jury with an appropriate charge and a 64-page charge. Your Honor, with regard to the, Your Honor's question about the one-year statute, that's on Joint Appendix page 4965. That's day one of trial. That was 4965 room. With regard to the hybrid witnesses, Ms. Harrison talked about that. They were not disclosed as experts through discovery. Mr. Thomas and Ms. McPherson were both allowed to testify as expert, not expert, as facts witnesses. Ms. Harrison said that the trial judge told the jury she is not an expert. She was put up as a facts witness. She was allowed for that. Mr. Thomas had no personal knowledge of Johnny Timpson in his testimony, and there was just brief cross-examination of him by the defense counsel. Ms. McPherson testified nothing about Johnny Timpson on direct, and defense counsel chose not to even cross-examine her. The remaining witness was Ms. Mullis. Mullis had not worked with Anderson County DSN Board nor Johnny Timpson since 2003. This was a May 2019 trial, and she was excluded based on that. Johnny Timpson's testimony, Judge Coggins did have a hearing, a brief hearing, with regard to Johnny. Johnny had a limited ability to respond with regard to his age. He said he was 50, 51, and so forth, and just kind of let that go. The court kind of left it where that was. Your Honor, I see that my time's almost up. We asked the court to affirm the ruling. The jury did have this for the Anderson County DSN Board and DDSN. They deliberated and came back with a defense verdict, and Judge Coggins gave us a judicious trial and went through a lot of error. The lower court ruling should be affirmed. Thank you very much. Thank you, ma'am. Counsel, do you have any rebuttal? Yes, Your Honor, I do. We keep hearing that Sandra was late on the scene. Every year, in addition to each incident, they had to inform the family, and I refer to the Zinnerman case, where the Supreme Court said if a person who's incompetent gives consent, it's an invalid consent, and it could give rise to a 1983 claim. Your Honor, for years, they were giving him training on sexual responsibility, how to wear a condom, how to pick your partners. This person had the mentality of a preschooler. The mother and Angela were only consulted one time during his entire time at Anderson, when he eloped. Every year, they had to be consulted on the plan. Every incident, they should have been informed, though. As to Sandra appearing on the scene late, the record shows that they were taking him to Sandra's house on weekends. I can't remember one or two weekends a month. For years, prior to her finding out about the burned arm, Judge, when you are exactly right about the SNAP benefits and what we weren't able to put in, for over a year after she took Johnny out, they kept his SNAP benefits. They didn't refund the overpayment that he had made for psych services. They were trying to set her up to fail so he would have to come back in and couldn't bring a lawsuit. They didn't tell her that she could get paid to take care of him or she could get some help at home with him. So, Your Honor, that goes to the retaliation issue. Your Honor, as to the slight care issue, Etheridge was not a case where you have a group home and a heightened duty of care. The Supreme Court established a heightened duty of care of reasonable care based on the applicable standards when there is a person in a group home. That case, the Etheridge case, and the Young case that they cite, neither of those had that heightened duty of care. Your Honor, in 2017, in the Mims case, the South Carolina Court of Appeals affirmed the standard of reasonable care and the decision in the Madison case. Your Honor, as to the idea of experts, we identified those experts in October 2016. In our identification of experts, we also provided the report that Mr. Thomas had done and they didn't raise the issue of them, of us not having an expert report for our hybrid witnesses until the time of prom. So, had they raised that, it could have been cured. The court did not use a standard this court has required that they use to determine whether a client should be excluded. Your Honor, we have shown that when he was released, he had zero services. By the time of trial, they had limited him to 28 hours a week. We filed an appeal. It took nine months to get a decision where we went up from 28 hours to 102 hours. Under Doe v. Kidd, Your Honor, we would respectfully ask for interim legal fees. These cases are expensive and these people don't have any money. I've been reviewing, Your Honor, the court and other district courts have criticized us for engaging in a crusade. Your Honor, Matthew Perry, Thurgood Marshall, Scottswood Robinson, none of them brought the Sally May Fleming case so that Sally May would have a seat on the bus. They brought it as a private attorney general, just as Johnny Timmons did. We're being criticized for a crusade. I kind of feel like Matthew Perry must have felt in front of George Bell Timmons. We are not being given a level playing field and we would ask that the court consider that Johnny Timmons brought this case in as important role as a private attorney general. Your Honor, let me say just one quick thing. I can't see the timer anymore. You're over time, but finish your thought. Okay. As to the one-year statute, Judge Angie, you were on the King-Davis-Grant case or Grant-Davis. In that case that they rely on, the plaintiff acknowledged wrongly that there was a one-year statute of limitations. He was a claim to be legally blind. He was a sex offender and there were a number of reasons why the Fourth Circuit affirmed that case. So, we would ask that the court consider the importance of clearly establishing the three-year statute of limitations for the ADA. Thank you very much for your argument, counsel. We're sorry we can't come down and shake hands with you, but we look forward to a day when we can do that. Now, I'd like to ask the clerk to adjourn court for the day. This honorable court stands adjourned until this afternoon. God save this United States and this honorable court.
judges: Diana Gribbon Motz, G. Steven Agee, James Andrew Wynn